THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THOMAS TURNER,<br><br>    Plaintiff,<br><br>  v.<br><br>W.W. GRAINGER, INC., an Illinois corporation; RONALD HANSEN, and his marital community; JOHN DOE MANAGERS and SUPERVISORS and their marital communities,<br><br>    Defendants. | No. C09-1068 RAJ<br><br>DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

In response to defendants' motion for summary judgment, Turner attempts to distract the Court from the compelling case for dismissing all of his claims. For example, Turner tries to minimize the egregiousness of his misconduct to create the false impression that Grainger treated similarly-situated employees differently. Further, he ignores the undisputed evidence, including his deposition testimony and that of Jake Leonard, and chooses instead to rely on speculation and conjecture to support his claims. Finally, Turner attempts to create a smokescreen by focusing on irrelevant facts and embellishing the significance of the fact that Helene Sherlock's notes contain Turner's age and seniority. These tactics fail. The undisputed facts are that Turner was discharged after Grainger justifiably concluded (based on Turner's *own admission*) that he had (1) used a Boeing employee account to make purchases for friends and family and to boost his own sales numbers; and (2) purchased two Fluke infrared imaging cameras at the end of the year

DEFENDANTS' REPLY ISO THEIR MOTION FOR
SUMMARY JUDGMENT (No. C09-1068 RAJ) - 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

04311-0016/LEGAL18439537.1

to increase his district's numbers, resulting in increased compensation, and then returned them the next year. Turner cannot carry his burden of showing that this legitimate non-discriminatory reason for his discharge was pretextual. Accordingly, defendants' motion for summary judgment should be granted.

## II.   TURNER DOES NOT MEET HIS BURDEN

### A.   Turner has Presented no Credible Evidence that Grainger's Stated Reason for Terminating his Employment was Pretext for Unlawful Age Discrimination

Turner presents no credible evidence that Grainger's articulated reason for his termination was pretextual. Turner must produce evidence that Grainger, in fact, intentionally discriminated against him by taking the adverse action, not just evidence that Grainger's proffered reason is "unworthy of belief." Hill v. BCTI Income Fund-I, 144 Wn.2d 172, 184-85, 196, 23 P.3d 440 (2001); Hatfield v. Columbia Fed. Sav. Bank, 68 Wn. App. 817, 823-24, 846 P.2d 1380 (1993). Summary judgment is appropriate unless Turner establishes that the explanation is a pretext *and* that a genuine fact issue exists regarding the ultimate question in every discrimination case: whether the employer intentionally discriminated. Reeves, 530 U.S. at 142; see Hill, 144 Wn.2d at 186-87 (adopting Reeves standard). Turner has not met that burden. Although he makes a number of arguments to establish pretext, as explained below, none of his arguments withstand scrutiny.

#### 1.   Employees Terminated for Poor Performance are Not Similarly-Situated to Turner who was Terminated for Misconduct

Turner attempts to show pretext by claiming that Grainger had a "pattern" of terminating older workers. In support of this claim, Turner presents evidence that during a two year period, six workers over-40 were placed on Performance Improvement Plans ("PIPs") and, eventually, left the Company. Turner, however, was terminated for *misconduct*, not for performance. Defendants never took issue with Turner's performance. Throughout his career at Grainger he demonstrated satisfactory performance and consistently met his goals. This is not a performance case. Evidence regarding employees who struggled with and were ultimately disciplined for

DEFENDANTS' REPLY ISO THEIR MOTION FOR SUMMARY JUDGMENT (No. C09-1068 RAJ) - 2

04311-0016/LEGAL18439537.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

*performance* is completely irrelevant to Turner's circumstances. The six employees identified by Turner did not leave the Company under circumstances even *remotely* similar to Turner's. In fact, Oberlander—to whom Turner devotes multiple pages of his response—was in a different sales division than Turner, with a different direct supervisor than Turner, and a different Regional Vice President than Turner. Declaration of Helene Sherlock in Support of Defendants' Motion for Summary Judgment ("Sherlock Decl."), ¶ 2; Second Declaration of Ron Hansen in Support of Defendants' Motion for Summary Judgment ("Hansen Decl. II"), ¶ 2. Neither Ron Hansen nor Chris Garlieb—the ultimate decision-maker in Turner's termination—had anything to do with supervising or disciplining Oberlander. Hansen Decl. II, ¶ 2; Declaration of Christopher Garlieb in Support of Defendants' Motion for Summary Judgment, ("Garlieb Decl."), ¶ 2. Nor did defendant Hansen supervise or discipline any of the other employees identified by Turner. Hansen Decl. II, ¶ 2.

Further, Turner presents no evidence that any of these six individuals were disciplined (or terminated) for misusing a customer employee account or manipulating sales to boost district numbers. Thus, even under the authority cited by Turner, these six individuals are not "similarly situated" to Turner because they did not engage in conduct similar to Turner's. See Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment ("Turner Response") (DKT 42), p. 16 ("Individuals are similarly situated when they have similar jobs *and display similar conduct*." Vasquez v. County of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2003)) (emphasis added).

Even if the Court were to look past the fact that misconduct and performance are two entirely distinct concepts, the PIP and exit of six individuals over 40 could not be considered credible evidence of pretext for age discrimination when Turner admits that he was also aware of individuals *under* 40 being placed on PIPs and exited from the Company. Turner Dep., 75:22—76:6 (MD 39-40) (DKT 36-2). Finally, the fact that six individuals over-40 were placed on PIPs

DEFENDANTS' REPLY ISO THEIR MOTION FOR SUMMARY JUDGMENT (No. C09-1068 RAJ) - 3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

04311-0016/LEGAL18439537.1

does not prove anything absent proof that they were inappropriately or unjustifiably disciplined for performance. Turner offers no evidence on this point.

### 2. Alleged Misconduct of Other Employees Does Not Excuse Turner's Misconduct

Turner claims that a number of other Grainger employees were misusing the Boeing employee account, so he should have been allowed to misuse it as well. "Everyone else was doing it" is not an excuse for misconduct. Even if it was, Turner did not raise others' conduct as a defense in the written admission he provided to Grainger. There is absolutely no evidence that any of the individuals involved in discussions leading up to Turner's termination (Sherlock, Hansen, and Garlieb) were aware of Sherri Smith or anyone else misusing the Boeing employee account. In fact they were *not* aware of allegations of anyone at the Everett branch misusing the Boeing employee account. Hansen Decl. II, ¶ 3; Sherlock Decl., ¶3; Garlieb Decl., ¶ 3.

In any event, Smith left Grainger in 2007. Any misconduct she may have engaged in, observed or condoned would have ended years before the investigation into Turner's misconduct in early 2009 and is not probative of Grainger's knowledge or intent regarding Turner's termination. So long as Grainger had a good faith belief in its proffered reason for Turner's termination that is all that was required, even if that belief was based on mistaken facts.[1]

### 3. Turner's Evidence Regarding Leonard and Diamond is Inaccurate and Misleading

In a further effort to divert the Court's attention from his misconduct, Turner points the finger at two "younger" employees, Jake Leonard and Patrick Diamond, and claims they engaged in similar misconduct and received lesser discipline. The evidence offered by Turner with respect to these two individuals is inaccurate and, in the case of Leonard, a complete self-serving fabrication that ignores and contradicts Leonard's sworn deposition testimony.

---

[1] See Ransom v. CSC Consulting, Inc., 217 F.3d 467, 471 (7th Cir. 2000) ("[I]t is no business of a court . . . to decide whether an employer demands too much of its workers. In fact, it is not even the court's concern that an employer may be wrong about its employee's performance, or be too hard on its employee.") (internal quotation marks and citation omitted), cert. denied, 531 U.S. 1037 (2000).

DEFENDANTS' REPLY ISO THEIR MOTION FOR
SUMMARY JUDGMENT (No. C09-1068 RAJ) - 4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

04311-0016/LEGAL18439537.1

In his response, Turner paints 31-year-old Leonard as a knowing accomplice to Turner's misconduct in misusing the Boeing account. Leonard's deposition testimony shows that nothing could be further from the truth. Aside from Turner's own self-serving statements,[2] there is absolutely no evidence that Leonard knowingly "assisted" Turner in misusing the Boeing employee account. To the contrary, during his deposition, Leonard unequivocally (and in many cases, repeatedly) testified to the following: (1) The Boeing employee account was to be used only by Boeing employees, deposition of Jake Leonard ("Leonard Dep."), 19:15-22; 37:9-14; 81:12-21 (MDII 15, 20, 30);[3] (2) during the time that Leonard was branch manager, employees at the Everett branch were instructed to ask customers seeking to make a purchase on the Boeing employee account whether or not the customer was a current or retired Boeing employee, branch employees were also asked to verify the customer's Boeing identification, Leonard Dep., 19:23—20:5; 33:25—34:16; 46:8—47:3; 48:4 (MDII 15-16, 17-18, 21-22, 23); (3) employees at the Everett branch trusted the integrity of Grainger account managers, including Turner, when account managers placed orders on the Boeing employee account—thus, if Turner placed an order on the Boeing employee account, branch employees would assume that the order was for a Boeing employee, Leonard Dep. 48:20—49:24 (MDII 23-24); (4) when Turner placed an order on the Boeing employee account for his father, Leonard did not know that the order was for Turner's father (a non-Boeing employee), Leonard Dep., 53:16—55:7 (MDII 25-27); and (5) had Leonard known that Turner was placing an order for his father, he would not have helped Turner or let any of the employees in the branch help Turner, Leonard Dep., 60:25-61:6 (MDII 28-29).

---

[2] Turner's unsupported self-serving declaration is not sufficient to survive summary judgment. To establish pretext, "the employee must do more than express an opinion or make conclusory statements." Chen, 86 Wn. App. at 190. See also Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (plaintiff may not rely "merely upon conclusory allegations, improbable inferences, and unsupported speculation").

[3] True and correct copies of the pages of the deposition testimony and exhibits to deposition testimony cited herein are attached to the Second Declaration of Maralee Downey ("MD II") filed contemporaneously with this reply.

DEFENDANTS' REPLY ISO THEIR MOTION FOR
SUMMARY JUDGMENT (No. C09-1068 RAJ) - 5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

04311-0016/LEGAL18439537.1

Leonard's testimony confirms that Turner's conduct in using the Boeing employee account to make purchases for non-Boeing customers was wrong. Leonard knew it was wrong and Leonard told the Everett branch employees that it was wrong.[4] Leonard did not "assist" Turner in misusing the account. Leonard is guilty only of trusting Turner's integrity to use the account for its proper purpose—that mistake hardly makes Leonard complicit in Turner's misconduct. Leonard was not disciplined because he did not engage in any misconduct. Leonard Dep., 36:9-15 (MDII 19).

The only other employee identified in Turner's response as a "younger employee[] accused of ethics and integrity violations" that received lesser discipline than Turner is Patrick Diamond. Turner Response, pp. 8-9. Diamond is not an appropriate comparator. The "misconduct" Turner relies on is an incident from October 2005 in which Diamond's expense reports were audited. Sherlock Decl., ¶ 4. Based on that audit, it initially appeared that Diamond had purchased holiday gifts for his direct reports that were more expensive than recommended. The gifts were some sort of food item. It was later determined that the purchases were in fact appropriate. However, the audit also revealed that Diamond's administrative assistant had approved some of her own expenses. That was not proper protocol. As such, Garlieb (Diamond's RSVP at the time) put a coaching document in Diamond's file reiterating that it was Diamond's responsibility to review and approve all expenses related to team activities. Id.

Diamond's "misconduct" is clearly distinguishable from Turner's. First of all, this incident occurred several *years* before Turner's termination. Second, it involved a totally different type of violation than the violations at issue in the present case. A misstep in supervisory protocol without any type of financial ramification or benefit – personal or otherwise –is hardly comparable to repeated misuse of a customer account and manipulation of sales to

---

[4] Incidentally, Leonard—the branch manager at all times relevant to this litigation—also testified that he had no knowledge of employees misusing the Boeing customer account when Sherri Smith was branch manager. Leonard Dep., 36:16-22 (MDII 19).

DEFENDANTS' REPLY ISO THEIR MOTION FOR
SUMMARY JUDGMENT (No. C09-1068 RAJ) - 6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

04311-0016/LEGAL18439537.1

boost district numbers. Moreover, at the time of the 2005 incident Diamond was 42 years old which puts him *with Turner* in the class of individuals protected from age discrimination by the ADEA and WLAD. Id.

### 4. Misusing Accounts and Manipulating Sales is Wrong

Turner asserts that Grainger was not entitled to discipline him for his misconduct because it could not point to rules that explicitly state, (1) "Grainger employees are not to use the Boeing employee account to make purchases for individuals who are not Boeing employees," and/or (2) "Grainger employees are not to personally purchase merchandise for thousands of dollars at the end of the sales year to increase district numbers and then return that merchandise at the beginning of the next sales year."[5] That argument is absurd. Grainger expects its employees to conduct themselves in an honest and ethical manner and it has clearly communicated that expectation to its employees. Declaration of Ron Hansen in Support of Defendants' Motion for Summary Judgment ("Hansen Decl."), pp. 11-12 (Ex. A) (DKT 37). There is nothing that requires Grainger (or any other employer) to keep a list of rules specifically prohibiting each of the infinite ways in which an employee might choose to engage in dishonest or unethical conduct. Turner used an account limited to Boeing employees and purchased merchandise at year end, only to return it the next year, for the purpose of falsely increasing sales numbers. The conduct is unethical and wrong and Turner knew better.

It is of little consequence that the Boeing employee account was arguably accessible to other non-Boeing employees. The account was clearly identified, marketed, and intended to be used as an account for *Boeing employees*. Hansen Decl. II, ¶ 4, Ex. A. To that end, Grainger branches were directed to check customer identification in connection with purchases on the account to confirm that the customer was a current or retired Boeing employee. Leonard Dep.,

---

[5] In his response Turner argues that there is no rule prohibiting someone from purchasing a product, even if it might end up getting returned. That is not the case here. Turner had no intention of keeping the infrared cameras. He *admitted* that he purchased the cameras, at least in part, for the purpose of increasing his districts' sales. Turner Dep., Ex. 2 (MD 44-46) (DKT 36-2).

DEFENDANTS' REPLY ISO THEIR MOTION FOR
SUMMARY JUDGMENT (No. C09-1068 RAJ) - 7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

04311-0016/LEGAL18439537.1

34:11-16 (MDII 18). The fact that a non-Boeing employee could potentially misuse the account does not sanction Turner's willful misuse.

### 5. Garlieb Reasonably Relied on Turner's Statement

In Turner's written statement, he admitted to making purchases for non-Boeing employees on the Boeing employee account "to help [him] reach sales goal for that account," and he admitted to purchasing two Fluke infrared cameras for approximately $12,000 at the end of the sales year (and returning them shortly thereafter) in part to "to enhance sales for Ron's district." Turner Dep., Ex. 2 (MD 44-46) (DKT 36-2). He also admitted that it was wrong to run non-Boeing employee purchases through the Boeing employee account. Id. Turner now claims that he was coerced by Steve Welch into characterizing his actions as "wrong." Even assuming for the purposes of this reply that Turner was somehow coerced into writing the last couple sentences in his statement, the fact remains—*he admitted to the underlying conduct* and, regardless of whether he personally thought it was wrong, Grainger thought it was wrong and it is Grainger's opinion that matters. Courts are not to second-guess an employer's business decisions or to otherwise substitute their judgment for that of the employer. It does not matter whether Grainger's conduct was wise, fair, correct, or consistent with its policies or commitments—as long as it did not constitute unlawful discrimination based on Turner's age. See Wash. Fed'n of State Employees v. State Personnel Bd., 29 Wn. App. 818, 820 (1981) ("[T]he courts of this state are ill equipped to act as super personnel agencies."); Douglas v. Anderson, 656 F.2d 528, 533-35 n.5 (9th Cir. 1981) (In age discrimination case, "[t]he reason for a business decision need not meet the unqualified approval of the judge or jury, so long as it is not based on age." "The ADEA is not intended as a vehicle for general judicial review of business decisions[.]").

Chris Garlieb reviewed Turner's statement and relied on it as written, which he had every right to do. Garlieb Decl., ¶ 4. At the time he reviewed Turner's statement, Garlieb was not aware of any allegation by Turner that a portion of the statement was coerced. Id. In any event,

DEFENDANTS' REPLY ISO THEIR MOTION FOR
SUMMARY JUDGMENT (No. C09-1068 RAJ) - 8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

04311-0016/LEGAL18439537.1

Garlieb's decision was based on the underlying conduct—which Garlieb determined to be in clear violation of Grainger's Business Conduct Guidelines and sales governance—not Turner's acknowledgment that the conduct was wrong. Id. Garlieb made a business decision to terminate Turner's employment based on his misuse of the Boeing employee account and manipulation of sales for the purpose of enhancing district numbers. Id. Even if Turner disagrees with Garlieb's decision, there is nothing unlawful about the decision unless Turner can provide some evidence that Garlieb was motivated by an intent to discriminate against Turner based on his age. See Douglas, 656 F.2d at 533-35 n.5. Turner has not offered any evidence that his age played a part in Garlieb's decision or that Garlieb ever made any comment or displayed any conduct that evidenced age animus.

### 6.  Turner's Goals Were Reasonable and Achievable

As predicted in defendants' motion for summary judgment, Turner claims that he was given higher goals than his younger counterparts and that these high goals are evidence of intentional discrimination based on his age. However, as explained in defendants' motion, while Turner's *percentage* goal increase may have, at times, been larger than other sales representatives', his *incremental dollar* increase was nowhere near the largest increase and his increased goals were not disproportionate to others in his workgroup. Defendants' Motion for Summary Judgment (DKT 35), pp. 22-23. Turner does not address this distinction in his response. Nor does Turner address the fact that (1) based on his performance, his goals were clearly achievable, as evidenced by the fact that he often achieved or exceeded goal, and (2) he was the beneficiary of goal relief on at least two occasions—a fact that demonstrates Grainger's (and Hansen's) desire to help Turner *reach* his goals, rather than setting goals that were prohibitively high. Id. Turner characterizes his goals as extraordinarily high to the point of putting him at risk of discipline, including a PIP, Turner Response, p. 13, but Turner was never threatened with or placed on a PIP for failure to meet goals. His goals were reasonable,

DEFENDANTS' REPLY ISO THEIR MOTION FOR
SUMMARY JUDGMENT (No. C09-1068 RAJ) - 9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

04311-0016/LEGAL18439537.1

demonstrably achievable, and had nothing to do with his termination. They are not credible evidence of pretext.

### 7. References in Sherlock's Notes to Age and Seniority Not Sufficient to Create Genuine Issue of Material Fact

Finally, Turner makes much ado about the fact that Sherlock's notes contain his age and his seniority with the Company. Turner points to the notes as direct evidence of age discrimination that Grainger intentionally withheld until the eleventh hour. Turner is mistaken. Grainger turned over Sherlock's typed notes as soon as it became aware of the notes' existence. Sherlock Decl., ¶ 5. At the time it produced the typed notes, Grainger believed based on conversations with Sherlock that the typed notes were the originals. Sherlock Decl., ¶ 5. Later, when it learned that the typed notes were actually copied from handwritten notes, it provided the handwritten notes to Turner as well. Sherlock Decl., ¶ 5.

While it is true that the notes contain Turner's age and seniority, those notations alone are insufficient create an inference of discrimination. See Wallace v. O.C. Tanner Recognition Co., 299 F.3d 96, 99,101 (1st Cir. 2002) (fact that supervisor's notes from meeting where decision was made to terminate plaintiff referenced plaintiff's age, date of birth, and years of service was insufficient to establish age discrimination where age-related comments were made in context of discussion about possibility plaintiff would bring age-discrimination lawsuit—court noted that while "such discussions may be documented only rarely in an employer's notes, we think it likely that the potential for legal action is routinely addressed when company officials meet to consider terminating an employee"—summary judgment for employer affirmed); Nelson v. J.C. Penney Co., Inc., 75 F.3d 343, 345-46 (8th Cir. 1996) (fact that one of decision-makers wrote down plaintiff's age when discussing plaintiff with another manager prior to termination was insufficient to establish inference that age was basis for termination—"*a fact finder may not simply convert a condition that is necessary for a finding of liability (here, knowledge of plaintiff's age) into one that is sufficient for such a finding*"—vacating judgment for employee on

DEFENDANTS' REPLY ISO THEIR MOTION FOR
SUMMARY JUDGMENT (No. C09-1068 RAJ) - 10

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

04311-0016/LEGAL18439537.1

age discrimination claim and remanding for entry of judgment in favor of employer) (emphasis added).

Turner also highlights the fact that Sherlock admitted during her deposition to "paying attention" to age when a termination is taking place. However, during that same deposition, counsel neglected to ask her *why* she pays attention to age. Deposition of Helene Sherlock ("Sherlock Dep."), 64:24—65:1 (MDII 8-9) In fact, Sherlock's general practice of "paying attention" to an employee's age in the context of possible termination reflects nothing more than the commonplace awareness of the risk of litigation an employer faces every any time it terminates an employee over 40, or in any other protected category. Sherlock Decl., ¶ 6. Sherlock did not reference Turner's age or seniority as a factors weighing in favor of termination. Id.

The references to Turner's age and seniority are even less compelling when considered in light of the fact that Chris Garlieb, the ultimate decision-maker with respect to Turner's termination, never saw the notes or discussed Turner's age with anyone in connection with Turner's termination. Sherlock Dep., 128:13-19 (MDII 10); Garlieb Decl., ¶ 6. To create a genuine issue of material fact as to whether Grainger intentionally discriminated against Turner based on age, Turner must offer more than the factual references to age and seniority in Sherlock's notes. As explained above, he has failed to do so.

**B.    Turner Concedes Remaining State Law Causes of Action are Preempted by ERISA**

Turner concedes that his remaining state law tort and contract claims are preempted by ERISA, so no further discussion is required. However, even if his claims were not preempted by ERISA, they fail on the merits for the reasons set forth in defendants' brief, which remain uncontested by Turner. Defendants' Motion for Summary Judgment (DKT 35), pp. 12-16.

DEFENDANTS' REPLY ISO THEIR MOTION FOR
SUMMARY JUDGMENT (No. C09-1068 RAJ) - 11

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

04311-0016/LEGAL18439537.1

### C. Turner Does Not Dispute that Retaliation Claim Fails as Matter of Law

Turner has offered no response to defendants' arguments regarding his retaliation claim which fails as a matter of law for the uncontested reasons set forth on page 17 of defendants' motion. Defendants' Motion for Summary Judgment (DKT 35), p. 17.

### D. Turner's Request for Leave to Amend Complaint

Defendants do not oppose Turner's request to amend his Complaint to clarify that he is seeking relief under ERISA. Defendants have long suspected that Turner intended to seek such relief. Defendants' Notice of Removal (DKT 1). Defendants do, however, oppose any motion to amend to the extent that such amendment would (1) add new parties to the litigation or (2) require the parties to reopen discovery. Discovery closed in March and the parties are hardly more than a month removed from trial. In any event, Turner's ERISA claims—also analyzed under the McDonnell Douglas burden-shifting framework, Ritter v. Hughes Aircraft Co., 58 F.3d 454, 457 (9th Cir. 1995)—fail for the same reasons stated above.[6]

### III. CONCLUSION

For the reasons stated above, Grainger and Hansen respectfully request the Court grant their motion and enter an order dismissing all of Turner's claims with prejudice.

DATED: June 8, 2010

PERKINS COIE LLP
s/ Maralee M. Downey, WSBA No. 38239
MDowney@perkinscoie.com
Calvin L. Keith, pro hac vice
CKeith@perkinscoie.com
Henry F. Galatz, pro hac vice
Hank.Galatz@grainger.com
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
Attorneys for Defendants
W.W. Grainger, Inc. and Ronald Hansen

---

[6] Even assuming for the purposes of this motion that Turner could make out a prima facie case of ERISA discrimination, he cannot overcome Grainger's legitimate non-discriminatory reason for terminating his employment. Turner has offered no evidence that Grainger's decision was pretext for unlawful discrimination.

DEFENDANTS' REPLY ISO THEIR MOTION FOR
SUMMARY JUDGMENT (No. C09-1068 RAJ) - 12

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

04311-0016/LEGAL18439537.1

## CERTIFICATE OF SERVICE

I certify that on June 8, 2010, I caused the foregoing **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following individuals of record:

Mary Ruth Mann and James W. Kytle         Attorneys for Plaintiff
Law Offices of Mann and Kytle, PLLC
200 Second Avenue West
Seattle, WA  98119

Dated this 8th day of June, 2010, at Seattle, Washington.

        *s/ Janet Davenport*
        Janet Davenport, Legal Secretary

CERTIFICATE OF SERVICE (No. C09-1068 RAJ) - 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

04311-0016/LEGAL18439537.1